**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELHADJ MAATI MOULOUAD** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 06-599** |
| | : | |
| **TEMPLE UNIVERSITY - OF THE** | : | |
| **COMMONWEALTH SYSTEM OF** | : | |
| **HIGHER EDUCATION** | : | |

<u>**MEMORANDUM AND ORDER**</u>

**Kauffman, J.**                                                        **October   5,  2007**


        Now before the Court is Defendant Temple University's Motion for Summary Judgment.

For the reasons that follow, the Motion will be granted.


**I.  BACKGROUND**

        This case arises from the dismissal of Plaintiff Elhadj Maati Moulouad (hereinafter

"Plaintiff") from his position as an Administrative Manager III at Temple University's School of

Social Administration (hereinafter "SSA").  Plaintiff is a United States citizen residing in

Pennsylvania who was born and raised in Morocco.  Pl.'s Dep. 73-76, attached to Def.'s Mot. for

Summ. J. at Ex. 2.  He began working for Defendant Temple University (hereinafter "Defendant"

or "Temple") in 1988 as a bookkeeper in the Temple University Center for Social Policy

(hereinafter "CSP") and was promoted to a financial analyst position in 1992.  <u>Id.</u> at 97.  In 1994,

he became a business manager at CSP, and in 2000, became a manager of finance and

administration at SSA.  <u>Id.</u> at 98, 104-05.  Throughout his tenure at Temple, Plaintiff received

merit-based increases at the close of each fiscal year.  <u>Id.</u> at 123-25.

1

In July 2003, Larry Icard became the new Dean of SSA.  Dep. of Larry Icard 6, attached to Def.'s Mot. for Summ. J. at Ex. 1.  After his arrival, Dean Icard decided that, due to administrative problems within SSA, reorganization of the school was necessary in order to maximize SSA's limited resources.  Id. at 17-21.  During the reorganization assessment period, which lasted over nine months, Dean Icard and others working on the reorganization examined the job descriptions of various employees and compared them to the "skill sets" SSA would need after the reorganization.  Id. at 39-40.

In June 2004, pursuant to the reorganization plan, SSA eliminated nine support and administrative positions, including Plaintiff's position as Administrative Manager III.  Aff. of Sandra Foehl ¶ 5, attached to Def.'s Mot. for Summ. J. at Ex. 3; Dep. of Larry Icard 40-42.[1]

Plaintiff alleges that the decision to terminate his position "constituted national origin discrimination in employment."  Compl. ¶ 20.  In support of this claim, he asserts that on July 16, 2003, approximately eleven months prior to his termination, Dean Icard told him, "[Y]ou have two strikes against you in this University.  A, that you're not white and B, you have an accent."  Pl.'s Dep. 154.[2]  Plaintiff acknowledges that the statement was not related to his employment at Temple.  See id. at 157-58.  He also acknowledges that Dean Icard never again mentioned his national origin, race, or accent and that he never felt discriminated against on any other occasion.

---

[1]    The elimination of positions as part of the SSA reorganization affected seven African American females and two white males.  Aff. of Sandra Foehl ¶ 6.  Temple University's Department of Human Resources monitored the reorganization plan, "taking into account collective bargaining agreements and equal opportunity/nondiscrimination prior to implementation of the plan."  Id.; see also Dep. of Larry Icard 74-76.

[2]    Although Plaintiff was aware of Temple's internal policies to report discrimination issues, he did not make any complaints about Dean Icard's comment.  Pl.'s Dep. 185.

2

Id. at 156.  Plaintiff never heard Dean Icard talk about anyone else's national origin, race, or accent.  Id. at 161.

Plaintiff acknowledges that Dean Icard's comment was the only overt example of what he perceived to be discrimination.  He believes, however, that Dean Icard did not like him and "wasn't outgoing and helpful."  Id. at 162-64.  He also acknowledges that Dean Icard did not single him out for different treatment.  Id. at 173.

On or about September 20, 2004, Plaintiff filed a verified charge of discrimination with the Pennsylvania Human Relations Commission (hereinafter "PHRC") and cross-filed the complaint with the United States Equal Employment Opportunity Commission (hereinafter "EEOC").  Although the PHRC made a finding of no probable cause, he received a right to sue letter dated November 15, 2005 from the EEOC.  Plaintiff filed the Complaint on February 9, 2006, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (hereinafter "Title VII") and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951 et seq. (hereinafter "PHRA").

## II.  LEGAL STANDARD

### A.  Summary Judgment

In deciding a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the test is "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law."  Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, "there can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The party moving for summary judgment bears the initial burden of showing the basis for its motion.  See Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).  If the movant meets that burden, the onus then "shifts to the non-moving party to set forth specific facts showing the existence of [a genuine issue of material fact] for trial."  Id.

**B.  Claims of National Origin Discrimination**

Plaintiff's claims of national origin discrimination[3] must be analyzed under the burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[4] Under this standard, Plaintiff initially bears the burden of proving by a preponderance of the evidence a prima facie case of discrimination.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S.

---

[3]     Plaintiff's Title VII claim and his PHRA claim are analyzed under the same framework and will be considered together for the purposes of Defendant's Motion.  See, e.g., Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083-84 (3d Cir. 1995).

[4]     Both parties agree that this is not a "direct evidence" case of discrimination because Dean Icard's statement was unrelated to the decisionmaking process that led to Plaintiff's dismissal.  See, e.g., Bullock v. Children's Hosp. of Phila., 71 F. Supp. 2d 482, 486 (E.D. Pa. 1999) ("As a general matter, comments, even by a decision-maker, will not constitute direct evidence of discrimination, unless they are related to the decisional process itself."). Accordingly, the Court will apply the "circumstantial evidence" standard of McDonnell Douglas rather than the "direct evidence" standard of Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

248, 252-53 (1981).  Next, assuming that Plaintiff satisfies this burden, Defendant must then

"articulate some legitimate, nondiscriminatory reason for the employee's rejection."  Id. at 253

(quoting McDonnell Douglas, 411 U.S. at 802).  Finally, if Defendant meets this burden, Plaintiff

"must then have an opportunity to prove by a preponderance of the evidence that the legitimate

reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

Id. (citing McDonnell Douglas, 411 U.S. at 804).  While the burden of production shifts under

the McDonnell Douglas framework, the ultimate burden of persuasion in Title VII cases rests at

all times with Plaintiff.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).


## III.  ANALYSIS

In order to establish a prima facie case of national origin discrimination, a plaintiff must

show that: "(1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position;

(3) he/she was subject to an adverse employment action despite being qualified; and (4) under

circumstances that raise an inference of discriminatory action, the employer continued to seek out

individuals with qualifications similar to the plaintiff's to fill the position."  Sarullo v. U.S.

Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (citing McDonnell Douglas, 411 U.S. at 802;

Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 348 n.1, 352, 356 (3d Cir. 1999)).  This test,

however, "must not be applied woodenly, but must rather be tailored flexibly to fit the

circumstances of each type of illegal discrimination."  Geraci v. Moody-Tottrup, Int'l, Inc., 82

F.3d 578, 581 (3d Cir. 1996); see also Int'l Bhd. of Teamsters v. United States, 431 U.S. 324,

358 (1977) ("The importance of McDonnell Douglas lies, not in its specification of the discrete

elements of proof there required, but in its recognition of the general principle that any Title VII

plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act.").  Plaintiff's burden to demonstrate a prima facie case is "not onerous."  Burdine, 450 U.S. at 253.

In the instant case, it is undisputed that Plaintiff is a member of a protected class due to his Moroccan heritage.  It is also undisputed that he was qualified for his former position and that he was subjected to an adverse employment action when he was terminated despite his qualifications.[5]  However, Plaintiff has failed to establish a prima facie case with respect to his termination during the reorganization process because he has not shown that the decision to terminate "raises an inference of discriminatory animus."  Sarullo, 352 F.3d at 798.  Because Plaintiff is arguing that the decision to eliminate him during the SSA reorganization was discriminatory, he bears a heavy burden to create an inference of discrimination.  See Hook v. Ernst & Young, 28 F.3d 366, 375 (3d Cir. 1994) ("[A] plaintiff whose employment position is eliminated in a corporate reorganization or work force reduction carries a heavier burden in supporting charges of discrimination than does an employee discharged for other reasons." (quoting Wilson v. Firestone Tire & Rubber Co., 932 F.2d 510, 517 (6th Cir. 1991))).

In the instant case, Defendant has offered evidence that the decision to terminate Plaintiff was part of a larger restructuring of SSA and that the Department of Human Resources closely

---

[5]     Although Dean Icard did express some concerns about Plaintiff's job performance, the record does not indicate that Plaintiff received any formal reprimands or warnings for performance deficiencies.  Moreover, he had received merit increases at or near the top levels while at Temple, and he has submitted two affidavits indicating that he was qualified to serve as a business manager.  See Affs. of Frank Williams, Jr. and Kirshna Hillyard, attached to Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. at Exs. D, E.  Defendant agrees that Plaintiff was not terminated due to poor performance or lack of qualifications.  See Def.'s Reply to Pl.'s Resp. in Opp'n to the Mot. for Summ. J. 5 n.4.

monitored the process based on Temple's nondiscrimination policy.  Plaintiff acknowledges that the reorganization of SSA was necessary to the survival of the school, rather than "a hoax or just a ruse or just something that was made up."  Pl.'s Dep. 169.  He argues only that the remarks made by Dean Icard on July 16, 2003 foreshadowed the Dean's increasing dissatisfaction with him and that this dissatisfaction stemmed from prejudice, eventually leading to the termination decision.  However, Dean Icard's inappropriate statement was an isolated comment made almost one year before Plaintiff was terminated.  Plaintiff admits that Dean Icard never again mentioned national origin, race, or accent and never treated him differently than other employees.  He also acknowledges that, throughout his tenure at Temple, this brief and isolated conversation with Dean Icard was the only instance in which he felt any form of discrimination.

Whatever the import of this single comment, Plaintiff fails to link it in any meaningful way to his termination.  Mere speculation is insufficient to establish a prima facie case of national origin discrimination.  See, e.g., Bailey v. Principi, 2003 U.S. Dist. LEXIS 15538, at *19 (E.D. Pa. Aug. 20, 2003) ("[T]he plaintiff . . . must demonstrate the existence of sufficient facts to allow him to prove by a preponderance of the evidence that a prima facie case of discrimination exists that goes beyond the plaintiff's mere speculation."); Bullock, 71 F. Supp. 2d at 490 ("[T]he plaintiff must prove by a preponderance of the evidence that a prima facie case of discrimination exists.  It does not suffice to suggest the mere possibility of discrimination.").  Plaintiff's reliance on a single remark about national origin fails to establish a causal link between his protected status and the final decision to terminate him as part of the larger reorganization process.  See Sarullo, 352 F.3d at 798 (explaining that to establish a discrimination claim, a plaintiff "must establish some causal nexus between his membership in a

protected class and the decision to not rehire him").  For this reason, Plaintiff cannot establish a

<u>prima</u> <u>facie</u> case.[6]


## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted.

An appropriate Order follows.

---

[6]     Plaintiff did not apply to become Assistant Dean, a position that was not filled until several months after his termination.  <u>See</u> Pl.'s "Job Club Activities" and "Positions Applied to at Temple University," attached to Def.'s Reply to Pl.'s Resp. in Opp'n to the Mot. for Summ. J. at Ex. 2; <u>see also</u> Dep. of Larry Icard 51-53.  Without deciding whether Plaintiff was qualified to be Assistant Dean, Defendant's failure to hire a person who did not apply for the position cannot give rise to an inference of national origin discrimination.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELHADJ MAATI MOULOUAD** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 06-599** |
| | : | |
| **TEMPLE UNIVERSITY - OF THE** | : | |
| **COMMONWEALTH SYSTEM OF** | : | |
| **HIGHER EDUCATION** | : | |

<u>**ORDER**</u>

**AND NOW**, this      5th      day of October, 2007, upon consideration of Defendant Temple University's Motion for Summary Judgment (docket no. 10), Plaintiff's Response thereto (docket no. 11), and Defendant's Reply (docket no. 12), and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **GRANTED**, and the Clerk of the Court shall mark this case **CLOSED**.

**BY THE COURT:**

 /s/ **Bruce W. Kauffman** 
**BRUCE W. KAUFFMAN,  J.**

9